UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                                                                                  :

FEDERAL INSURANCE COMPANY, as subrogee of    :
TRANSAMMONIA, INC., as Charterer,                     :

                                      Petitioner,        :

        -v-                                                            :

BERGESEN D.Y. ASA OSLO, as agents of the Norwegian :
Flag LPG/C "HUGO N" and its owner, GENERAL GAS    :
CARRIER CORPORATION, LIMITED,                        :

                                      Respondents.     :         12 Civ. 3851 (PAE)

------------------------------------------------------------------------X        OPINION & ORDER

GENERAL GAS CARRIER CORPORATION, LIMITED, :

                                  Cross-Petitioner,   :

        -v-                                                       :

FEDERAL INSURANCE COMPANY,                                :

                                      Cross-Respondent. :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Claimant Federal Insurance Company ("Federal"), as subrogee of Transammonia, Inc., filed this petition to confirm an arbitration award pursuant to § 9 of the Federal Arbitration Act, 9 U.S.C. § 9 ("FAA" or the "Act"). Respondent Bergesen d.y. ASA, Oslo ("Bergesen"), as agent for the vessel LPG/C Hugo N and its owner, General Gas Carrier Corp., Ltd. ("GenGas") has opposed that petition and cross-moved to vacate the arbitration award. For the reasons that follow, the petition to confirm the arbitration award is granted, and GenGas's cross-petition to vacate is denied.

**I.     Background**[1]

The underlying claim relates to a shipment of refrigerated anhydrous ammonia aboard a tanker ship, the Hugo N, from Saudi Arabia to the United States. The shipment was made pursuant to a purchase agreement for the sale of the ammonia from Transammonia, a Delaware corporation, to non-party PCS Sales (USA), Inc. ("PCS"). Pursuant to a June 13, 2003 Charter Party, Transammonia contracted with Bergesen, a Norwegian corporation, as agent for the owner of the Hugo N, to transport the ammonia aboard the Hugo N to Savannah, Georgia, and Geismar, Louisiana ("Charter Party"). Federal, an insurance company registered in New York and incorporated under the laws of Indiana, was Transammonia's primary liability insurer. GenGas, a Panamanian corporation, owned and operated Bergesen.

The Charter Party included a clause providing for arbitration of disputes arising out of the agreement. Paragraph 24 provided:

> Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York . . . pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner [Bergesen], one by the Charterer [Transammonia], and one by the two so chosen. The decision of any two of the three on any point or points shall be final. . . . Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorney's fees, and judgment may be entered upon any award made hereunder in any Court having jurisdiction in the premises.

Pet'r's Br. Ex. D ¶ 24.

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' pleadings and their submissions in support of and in opposition to the instant motion, including Federal's Verified Petition to Confirm the Award ("Pet'r's Br."), GenGas's Answer to Petition to Confirm Award and Cross-Petition to Vacate Award ("Resp't's Br.") and the April 11, 2012 decision and final award of the arbitral panel, Pet'r's Petition Ex. E ("Award"). All material facts are undisputed by the parties. Except where specifically referenced, no further citation to these sources will be made.

In October 2003, following delivery of the ammonia, PCS notified Transammonia that the shipment of ammonia had been contaminated, and had resulted in damage to PCS's equipment. Transammonia thereafter notified its primary liability insurer, Federal, of the alleged loss. On February 11, 2005, Transammonia notified the tanker ship's owner and managing agent, Bergesen, of the alleged contamination. The parties subsequently engaged in limited settlement negotiations.

On July 12, 2005, Transammonia made a demand against Bergesen and GenGas for arbitration under paragraph 24 of the Charter Party. In accordance with the Charter Party, Transammonia designated its party-appointed arbitrator in the demand for arbitration; Bergesen provided its party-appointed arbitrator in the response.

In April 2007, Transammonia and its insurers, including Federal, reached a settlement with PCS. Transammonia's insurers agreed to pay $1.1 million to PCS to settle its claims related to the contaminated ammonia, of which Federal paid $1 million.

In the spring of 2009, Federal revived the arbitration as subrogee of Transammonia, seeking reimbursement, through indemnification, of its $1 million payment to PCS. Federal and Bergesen then appointed the third arbitrator in accordance with paragraph 24 of the Charter Party.

In its submissions to the arbitral panel, Federal alleged that GenGas had breached its contract with Transammonia when it delivered two contaminated cargos of ammonia on the Hugo N, which severely damaged PCS's physical plant. In its submissions to the arbitral panel, it urged the arbitrators to focus on evidence that Transammonia (and, as subrogee, Federal) was entitled to indemnification from GenGas for the $1 million settlement payment paid by Transammonia to settle PCS's claim. *See* Award at 33. GenGas argued that, in fact, PCS was

unable to point to sufficient evidence showing that the ammonia transported on the Hugo N was the cause of the alleged damages to its plant. *See id.* at 34. It asserted that Federal failed to produce evidence showing that anything about the Hugo N had given rise to the presence of contaminants, that the Hugo N had actually delivered contaminated ammonia, that the delivered ammonia contained substances not usually found in industrial grade ammonia, or that the substances found in the ammonia were in amounts different than are regularly found in such ammonia. GenGas also argued that, as a matter of law, Federal's claim was precluded on the ground that Federal was not a lawful subrogee of Transammonia and thus not entitled to indemnification by GenGas.

On October 24 and 25, 2011, after full briefing of the issues in dispute, the parties appeared before the panel for an arbitration hearing.

On April 11, 2012, the panel majority issued its final award. In a 59-page opinion, it ruled that Transammonia is entitled to recover from GenGas $1 million, plus interest at a rate of 4.2807%, on its claim for the breach of the Charter Party. The decision in support of the award reflected the position of two of the three arbitrators; the third arbitrator dissented from the judgment, and issued a dissenting opinion. The arbitrators calculated the final award to be $1,213,212.33. The arbitrators unanimously held that Transammonia was entitled to $42,250 in legal fees and costs.

On May 15, 2012, Federal brought this petition pursuant to the FAA to confirm the award issued by the arbitrators (Dkt. 2). On July 6, 2012, GenGas submitted its opposition to the petition, and its cross-petition to vacate the Award (Dkt. 4). On July 20, 2012, Federal submitted its opposition to GenGas's cross-petition (Dkt. 6). On July 30, 2012, GenGas submitted its reply in further support of its cross-petition (Dkt. 8)

## II.     Legal Standard

In their petition, Federal seeks confirmation of the arbitral award.  In the cross-petition, GenGas seeks to vacate the award, claiming that it manifestly disregards controlling law.

Chapter 2 of the FAA, 9 U.S.C. §§ 201–08, which codifies the New York Convention, governs arbitration agreements that arise from a "legal relationship, whether contractual or commercial, which is considered commercial," except when those relationships are "entirely between citizens of the United States" and are otherwise domestic in nature.  9 U.S.C. § 202. Applying § 202, the Second Circuit has held that where an agreement to arbitrate "involve[s] parties domiciled or having their principal place of business outside [the United States]," that agreement is governed by the Convention.  *See Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 19 (2d Cir. 1997) (internal citation omitted). Because respondents Bergesen and GenGas are incorporated outside the United States, and the present dispute arises out of agreements to which they are parties, the New York Convention governs the petition before the Court.

However, where, as here, arbitration was conducted in the United States, chapter 2 and the Convention "allow a court in the country under whose law the arbitration was conducted to apply domestic arbitral law, in this case the FAA, to a motion to set aside or vacate the arbitral award."  *Yusuf Ahmed Alghanim & Sons,* 126 F.3d at 21; *see also Halcot Navigation L.P. v. Stolt–Nielsen Transp. Grp., BV*, 491 F. Supp. 2d 413, 420 (S.D.N.Y. 2007) (when arbitration is governed by the New York Convention, "this Court can also look to domestic arbitration law, specifically the FAA").

The FAA, in turn, provides a "streamlined" process for a party seeking a "judicial decree confirming an award, an order vacating it, or an order modifying or correcting it." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Section 9 provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected . . . .

9 U.S.C. § 9.

"It is well established that courts must grant an [arbitrator's] decision great deference." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003). The confirmation of an arbitration award generally is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)) (internal quotation marks omitted). "Only a barely colorable justification for the outcome reached by the arbitrators" is required to confirm an award on a timely petition to confirm. *Id.* (internal quotation marks omitted).

Accordingly, review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman v. KCD Fin., Inc.*, No. 11–cv–5865, 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997)). "A party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid summary confirmation of an arbitration award is high." *D.H. Blair & Co.*, 462 F.3d at 110.

[6]

The FAA sets out the limited circumstances under which a district court may vacate an arbitral award. These include, *inter alia*, "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced," and "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(3), (4). The Second Circuit has held that under § 10 of the FAA, "an arbitrator's award may also be vacated 'where the arbitrator's award is in manifest disregard of the terms of the [parties' relevant] agreement.'" *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 452 (2d Cir. 2011) (quoting *Yusuf Ahmed*, 126 F.3d at 23). However, "[t]he party moving the court to vacate an arbitral award 'must clear a high hurdle,' and bears a 'heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law.'" *Sea Shipping Inc. v. Half Moon Shipping LLC*, 848 F. Supp. 2d 448, 454 (S.D.N.Y. 2012) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1767 (2010); *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).

## III.  Discussion

GenGas argues that the majority of the arbitral panel acted in manifest disregard of the law as to each of the three alternative grounds on which it based its ruling. *See* Resp't's Br. 18–24. GenGas does not allege that it is entitled to vacatur under any of the statutory grounds under the FAA.

Arbitral awards should be vacated under the manifest disregard standard "only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." *T. Co. Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) (citation omitted). To satisfy this standard, there must be "a showing that the arbitrators knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of

the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." *Stolt–Nielsen S.A.*, 130 S. Ct. at 1768 (internal quotation marks omitted).

Such a review is thus "highly deferential to the arbitrators," in large part because a more flexible standard of review would "frustrate the basic purpose of arbitration, which is to dispose of disputes quickly and avoid the expense and delay of extended court proceedings." *STMicroelectronics, N.V. v. Credit Suisse Secs. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) (citation omitted).  Pursuant to this standard, an arbitral award should not be subject to vacatur "because of a simple error in law or a failure by the arbitrators to understand or apply it." *Id.*  A court should only vacate an award "when a party clearly demonstrates that the panel *intentionally defied* the law." *Id.* (emphasis added).

Here, the issues before the arbitrators were (1) whether Bergesen breached the Charter Party, and (2) whether Federal could recover from GenGas for the amount paid to PCS to settle its claim.  The majority decision found in favor of Federal on both claims.

GenGas seeks to vacate the arbitral award, claiming that it manifestly disregards controlling law because (1) the Carriage of Goods by Sea Act, 42 U.S.C. §§ 30701 *et seq.* ("COGSA") does not provide a claim for indemnity for a third party's tort damages; and (2) there was insufficient evidence in the record to support a finding that Federal established a *prima facie* claim of loss or damage under COGSA.

As to the first point, GenGas has not demonstrated that the arbitrators' application of COGSA manifestly disregarded controlling law.  Although the arbitral panel did not reach a unanimous decision with respect to whether Federal has adduced sufficient evidence to establish a *prima facie* case of a loss or damage under COGSA, it was unanimous in applying COGSA to both issues in dispute.  The dissenting opinion made no reference whatsoever to any erroneous

application of law by the majority; it took issue only with the majority's assessment of the record evidence.  Additionally, GenGas's assertion that the arbitral panel intentionally and deliberately failed to follow governing legal authority in *In re M/V DG Harmony*, 436 F. Supp. 2d 660 (S.D.N.Y. 2006), is unpersuasive; the majority in fact considered *In re M/V DG Harmony*, and determined that it did not apply to the underlying facts because PCS's claim did sound exclusively in tort.  PCS's claim, which catalyzed Transammonia's settlement payment, arose also out of the Charter Party and the Bill of Lading.  Accordingly, there is no indication that the arbitrators "intentionally defied" or "willfully flouted the governing law."  *STMicroelectronics*, 648 F.3d at 78; *Stolt–Nielsen*, 130 S. Ct. at 1768.

GenGas's alternative argument—that it is entitled to vacatur because the majority erred in finding sufficient evidence to support a *prima facie* case—fails to reveal a manifest disregard of the law.  GenGas argues that the majority erred in finding that Federal sufficiently established a *prima facie* case for loss or damage under COGSA, *i.e.*, that Federal had shown both that (1) the cargo was delivered in good order and condition to the ocean carrier's custody, and (2) the cargo was discharged in a damaged condition, and that GenGas failed to rebut this *prima facie* case with contrary evidence.  But, this claim does not establish manifest disregard of the law.  Properly construed, GenGas contends that the arbitrators in the majority disregarded *facts* or misapplied the *evidence.*  Disregard of facts or evidence is not a basis for vacatur.  *See Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 548 F.3d 85, 91 (2d Cir. 2008), *rev'd on other grounds*, 130 S. Ct. 1758 (2010) ("We do not, however, 'recognize manifest disregard of the *evidence* as proper ground for vacating an arbitrator's award.'") (quoting *Wallace*, 378 F.3d at 193).

Even if the Court found that this argument could be properly be considered under the manifest disregard standard, it would fail.  In reaching its decisions, the arbitral panel considered

the submissions of the parties, reports submitted by four experts (Bobby Latham and Steven Savage in support of Federal's position; David Jones and David Werdung in support of GenGas's position), two consecutive days of expert testimony, and the testimony of a fact witness with firsthand knowledge of the damage at the PCS plant.  *See id.* at 11–24.  The 59-page majority opinion was uncommonly detailed, and also well-reasoned, weighing the evidence presented by the witnesses as against the governing law.  The dissenting opinion, which accepts the governing legal standard, merely disagrees, in good faith, with the majority's assessment of the weight of the evidence.  Such a difference of opinion does not establish manifest disregard of the law.

In sum, GenGas has not come close to demonstrating that the decision and award by the majority of the arbitration panel should be vacated under the manifest disregard standard. Petitioners have met their burden of demonstrating that there is no genuine issue of material fact precluding summary judgment as to all portions of the Award.  The arbitrators' decision provides significantly more analysis than "a barely colorable justification for the outcome reached."  *D.H. Blair & Co.*, 462 F.3d at 110.  Accordingly, GenGas's petition to vacate the award must be denied.

## CONCLUSION

For the reasons stated herein, the petition to confirm the arbitration award is granted, and the cross-petition to vacate the award is denied. The petitioner's motion to strike is dismissed as moot. Petitioner is directed to submit to the Court a proposed order of judgment by September 21, 2012.

The Clerk of Court is directed to terminate the motion at docket number 11.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 7, 2012
       New York, New York